IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRIGHT SIAW AFRIYIE | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 3-04-CV-2467-D |
| | § | |
| CITY OF DALLAS | § | |
| | § | |
| Defendant. | § | |

**FINDINGS AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Defendant City of Dallas ("the City") has filed a motion for summary judgment in this *pro se* race discrimination and retaliation case brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981. For the reasons stated herein, the motion should be granted.

I.

In February 2000, the City hired Plaintiff Bright Siaw Afriyie, a black Canadian citizen born in Ghana, as an IT Analyst III in the Fire Rescue Department at a starting salary of $40,000 per year. (*See* Plf. Orig. Compl. at 2, ¶ 5; Def. MSJ App. at 39, 150). The City also agreed to sponsor plaintiff for an employment-based immigration visa. (*See* Plf. Orig. Compl. at 2, ¶ 6; Def. MSJ App. at 4). Shortly after plaintiff started work, the City applied for an alien labor certification on his behalf, which, if granted, would enable plaintiff to obtain permanent residence status in the United States. (Plf. Orig. Compl. at 2, ¶ 6).[1] While his application was pending, plaintiff accepted a new job

---

[1] The employment-based permanent resident application process consists of three steps. First, the employer must petition the Department of Labor for a labor certification on behalf of the alien employee by completing a Form ETA-750. *See* 8 U.S.C. § 1182(a)(5)(A)(I). After obtaining a labor certification, the employer must file an I-140 petition

working for Deputy Fire Chief Joe J. Kay as a GIS Analyst III. (Def. MSJ App. at 82). Plaintiff's annual salary in his new position was $53,600. (*Id*. at 38, 151). In February 2002, the Texas Workforce Commission ("TWC") rejected plaintiff's application for an alien labor certification, noting, *inter alia*, that "[t]he employer's wage offer is below the prevailing wage rate for this labor market and should be adjusted." (*Id*. at 103). This prompted plaintiff to request a pay raise from $25.77 per hour to the prevailing market rate of $32.69 per hour. (*Id*. at 112-13). Assistant Fire Chief Robert Bailey denied the request, but the City resubmitted plaintiff's application to the TWC with a revised job description reflecting his duties as a GIS Analyst. (*See id*. at 114, 132-33). In May 2003, the TWC rejected the revised application, noting again that plaintiff was being paid less than the prevailing wage for his new position. (*Id*. at 126). Plaintiff renewed his request for a salary increase, this time asking for $37.52 per hour--the prevailing wage rate identified by the TWC. (*See id.* at 134-36). Assistant City Manager Charles Daniels refused to overturn the Fire Department's decision and advised plaintiff that he considered the matter "closed." (*Id*. at 137, 164).

In January 2004, plaintiff asked his supervisor, Deputy Chief Kay, to convert more than 26 hours of overtime to compensatory time-off. Kay denied the request and reminded plaintiff that "all comp time must be approved in advance." (*Id.* at 100). That same month, plaintiff was transferred from the dispatch section in the basement of City Hall to the GIS office on the seventh floor of the same building. (*Id.* at 151). Plaintiff expressed dissatisfaction with the move, complaining that his new workstation was noisy and did not have a telephone. (*See id.* at 154). A few weeks later, plaintiff filed a grievance alleging that the City misclassified his job duties to justify a lower wage rate, hindered his opportunities for advancement, and subjected him to an inequitable work

---

with the Bureau of Citizenship and Immigration Services ("BCIS") requesting that the alien employee be allowed to apply for a work visa. *See id.* § 1154. If the I-140 petition is approved, the alien may seek an adjustment of status to that of a lawful permanent resident. *See id*. § 1255(a) & 8 U.S.C. § 1255(a).

environment for racially discriminatory reasons. (*Id.* at 83-84). Other grievances followed. (Plf. MSJ App. at 47, 48-49, 50-51).

On May 13, 2004, plaintiff filed a formal charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Def. MSJ App. at 138-39). After conducting an investigation, the EEOC was unable to conclude that the information obtained established a violation of the statutes. (Plf. MSJ App. at 07). Plaintiff then filed this action in federal district court. In his complaint, plaintiff alleges that the City discriminated against him on account of his race by paying him less than similarly situated white employees and retaliated against him for complaining about this pay discrepancy. (*See* Plf. Orig. Compl. at 3-5, ¶¶ 13-23).[2] The City now moves for summary judgment as to all claims and causes of action. The issues have been briefed by the parties and the motion is ripe for determination.

II.

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(C); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Where, as here, the summary judgment movant does not have the burden of proof at trial, the movant must point to the absence of a genuine fact issue. *See Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). The burden then shifts to the nonmovant to show that summary judgment is not proper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir), *cert. denied*, 113 S.Ct. 82 (1992). All evidence must be viewed in

---

[2] Plaintiff was represented by counsel when this lawsuit was filed. However, plaintiff has been proceeding *pro se* since his attorney withdrew on March 22, 2006.

the light most favorable to the party opposing the motion. *Rosado v. Deters*, 5 F.3d 119, 122 (5th Cir. 1993). However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence. *Topalian*, 954 F.2d at 1131.

III.

The City moves for summary judgment on three broad grounds: (1) plaintiff cannot sue for race discrimination under 42 U.S.C. § 1981; (2) plaintiff has failed to exhaust administrative remedies with respect to his retaliation claim based on events that occurred before May 13, 2004; and (3) plaintiff cannot prove that he was treated differently than similarly situated white employees because of his race or that he was retaliated against for engaging in protected activity. The court will address these arguments in turn.

A.

Plaintiff alleges that the City discriminated against him on account of his race in violation of Title VII and 42 U.S.C. § 1981. (*See* Plf. Orig. Compl. at 4, ¶ 15). Although private employers may be sued for race discrimination under both statutes, *see, e.g. Runyon v. McCrary*, 427 U.S. 160, 197, 96 S.Ct. 2586, 2607, 49 L.Ed.2d 415 (1976), persons employed by state or local governments must bring a claim under 42 U.S.C. § 1983 in order to assert their substantive rights under section 1981. *See Oden v. Oktibbeha County*, 246 F.3d 458, 463-64 (5th Cir.), *cert. denied*, 122 S.Ct. 341 (2001). Stated differently, section 1983 is the "sole remedy for discrimination by persons acting under color of state law." *Id.* at 463, *citing Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 731, 109 S.Ct. 2702, 2721, 105 L.Ed. 598 (1989). Here, plaintiff does not plead a cause of action under section 1983. The City is therefore entitled to summary judgment with respect to plaintiff's section 1981 claim. *Id.*; *see also Bell v. Dallas Housing Authority,* No. 3-02-CV1829-L, 2003 WL 22455385 at *4 (N.D. Tex. Sept. 23, 2003); *Wallace v. Dallas Independent School Dist.*, No. 3-

97-CV-2820-L, 2000 WL 575219 at *8 (N.D. Tex. May 11, 2000); *Garrett v. Dallas Public Schools*, No. 3-98-CV-3016-G, 1999 WL 1212859 at *2 (N.D. Tex. Dec 16, 1999).[3]

B.

The City also moves for summary judgment with respect to plaintiff's retaliation claim based on events that occurred before May 13, 2004-- the date of his EEOC charge. Under Title VII, a plaintiff must exhaust administrative remedies before filing suit in federal court. *See, e.g. Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002), *cert. denied*, 123 S.Ct. 1287 (2003). The exhaustion requirement also applies to claims of retaliation based on events that occurred prior to filing a formal charge of discrimination. *See Narasirisinlapa v. Communications Workers of America*, No. 3-04-CV-1643-BD, 2005 WL 1586590 at *1 (N.D. Tex. Jul. 6, 2005) (Kaplan, J.); *McCray v. DPC Industries, Inc.*, 942 F.Supp. 288, 294-95 (E.D. Tex. 1996). The Fifth Circuit has adopted a rule of reason which permits the scope of legal proceedings to extend as far as, but not further than, the scope of the agency investigation which could reasonably grow out of the administrative charge. *See Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir. 1995); *Young v. City of Houston*, 906 F.2d 177, 179 (5th Cir. 1990).

The EEOC charge filed by plaintiff alleges only race and national origin discrimination. Plaintiff did not check the box marked "retaliation" on the charge form or make any reference to retaliation on the part of the City. (*See* Def. MSJ App. at 138). Nor did plaintiff notify the EEOC that he had filed an internal grievance with the City alleging discrimination or opposed any employment practice made unlawful by Title VII. As a result, plaintiff is barred from asserting a retaliation claim based on events that occurred prior to the filing of his EEOC charge. *See Miller*

---

[3] Even if the court construes plaintiff's complaint to assert a cause of action under section 1983, such a claim still fails as a matter of law because there is no allegation, much less evidence, that the City had an unconstitutional policy or custom of race discrimination. *See Bell*, 2003 WL 22455385 at *4-5 (citing cases).

*v. Southwestern Bell Telephone Co.*, 51 Fed.Appx. 928, 2002 WL 31415083 at *6 (5th Cir. Oct. 7, 2002), *cert. denied*, 123 S.Ct. 1488 (2003), *citing Cable v. Ivy Tech State College*, 200 F.3d 467, 477 (7th Cir. 1999) (plaintiff failed to exhaust administrative remedies with respect to retaliation claim where EEOC charge did not even "hint at retaliation, much less develop [a] factual basis for the claim").[4]

C.

Plaintiff accuses the City of discrimination by paying him "at a considerably lower rate than what was paid to similarly situated white employees." (Plf. Orig. Compl. at 2-3, ¶ 8 & *id.* at 3-4, ¶ 14). To prove this claim, plaintiff may rely on direct or circumstantial evidence, or both. *See Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002), *cert. denied*, 123 S.Ct. 2572 (2003). "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Id.* at 897. Such evidence may include statements made by the employer or certain of its personnel which show on their face that an improper criterion served as a basis, though not necessarily the sole basis, for the adverse employment action. *See Fabela v. Socorro Independent School Dist.*, 329 F.3d 409, 415 (5th Cir. 2003). If plaintiff adduces direct evidence of discrimination, the burden shifts to the City to establish by a preponderance of the evidence "that the same decision would have been made regardless of the forbidden factor." *Fierros v. Texas Dept. of Health*, 274 F.3d 187, 192 (5th Cir. 2001), *quoting Brown v. East Miss. Electric Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993).

---

[4] The court notes that plaintiff filed a second EEOC charge alleging retaliation on August 24, 2006-- two days after the City filed its motion for summary judgment. (Plf. MSJ App. at 11-12). However, a charge of discrimination or retaliation must be filed with the appropriate agency within 300 days of the alleged violation. 42 U.S.C. § 2000e-5(e)(1); *Messer v. Meno*, 130 F.3d 130, 134 (5th Cir. 1997), *cert. denied*, 119 S.Ct. 794 (1999). To the extent plaintiff attempts to salvage his otherwise barred retaliation claims by filing a second EEOC charge, the statute of limitations precludes him from doing so.

As direct evidence of discrimination, plaintiff points to a statement allegedly made by Deputy Chief Kay when plaintiff asked for a wage adjustment to $37.52 per hour. According to plaintiff, Kay responded to this request by stating, "There are a lot of white people and U.S. citizens more qualified than [you] flipping hamburgers[.]" (Def. MSJ App. at 142, ¶ 7). Even if such a remark was made, it is not probative of discriminatory animus because Kay did not have authority over the employment decision at issue. *See Krystek v. University of Southern Mississippi*, 164 F.3d 251, 256 (5th Cir. 1999) (discussing requirements for proving discrimination by direct evidence). Instead, plaintiff's pay raise was denied by Assistant Fire Chief Robert Bailey and Assistant City Manager Charles Daniels. (Def. MSJ App. at 160-61, 164-65). There is no evidence that Kay had any involvement, much less authority, over the decision not to adjust plaintiff's pay to the prevailing wage rate. To the contrary, both Bailey and Daniels expressly deny that Kay had any input into their decision. (*Id.* at 161, 164). Plaintiff's unsubstantiated and speculative belief that Bailey and Daniels "could have been acting under the recommendation of Deputy Chief Kay" does not constitute direct evidence of discrimination. *See Lawrence v. University of Texas Medical Branch at Galveston*, 163 F.3d 309, 313 (5th Cir. 1999) ("[A] subjective belief of discrimination, however genuine, [may not] be the basis of judicial relief."); *Martin v. El Nell Inc.*, No. 3-03-CV-2209-D, 2005 WL 2148651 at *5 (N.D. Tex. Sept. 7, 2005) (Fitzwater, J.) (same).

### D.

Nor has plaintiff adduced sufficient circumstantial evidence of discrimination to create a genuine issue of material fact for trial. In order to establish a *prima facie* case of discriminatory compensation, plaintiff must prove that he is paid less than non-black employees for work requiring substantially the same responsibilities. *See Williams v. Galveston Independent School Dist.*, 78 Fed.Appx. 946, 2003 WL 22426852 at *2 (5th Cir. Oct. 23, 2003), *cert. denied,* 124 S.Ct. 1714

(2004), *citing Uviedo v. Steves Sash & Door Co.*, 738 F.2d 1425, 1431 (5th Cir. 1984), *cert. denied*, 106 S.Ct. 791 (1986); *Pittman v. Hattiesburg Municipal Separate School Dist.*, 644 F.2d 1071, 1074 (5th Cir. 1981).  Here, plaintiff compares his annual salary of $53,600 to Michael Miller and William Morrison--white employees who allegedly earn more than $150,000 per year.  (*See* Def. MSJ App. at 142, ¶ 7; Plf. MSJ Resp. at 5).  However, plaintiff makes no attempt to show that his job responsibilities as a GIS Analyst III are substantially similar to the responsibilities of Miller and Morrison.  In fact, the uncontroverted evidence shows that Miller is a GIS Technical Manager in the Public Works Department and Morrison works as a Fire Technician Specialist.  (Def. MSJ App. at 158).  Plaintiff admits that a Technical Manager is above an Analyst III in the GIS hierarchy.  (*Id.* at 36).  Likewise, a Fire Technician Specialist has different responsibilities than a GIS Analyst.  (*Id.* at 158).  Without at least some evidence that he was paid less than Miller and Morrison for work involving substantially the same responsibilities, plaintiff cannot survive summary judgment with respect to his race discrimination claim.  *See Lyons v. Burlington Coat Factory Warehouse Corp.*, No. 3-02-CV-0426-K, 2004 WL 515585 at *5 (N.D. Tex. Jan. 30, 2004) (granting summary judgment in favor of employer where plaintiff failed to controvert evidence that comparator employee had different job title and performed different work).[5]

E.

Plaintiff further alleges that the City retaliated against him by:  (1) twice denying him a promotion to Communications Manager; (2) altering his work conditions; (3) limiting his access to necessary equipment and training; (4) denying him overtime and overtime pay; and (5) subjecting

---

[5] Even if plaintiff could establish a *prima facie* case of discriminatory compensation, he has failed to adduce any evidence that the City's explanation for not raising his salary to the prevailing market rate was pretextual. The City explains that plaintiff did not receive a pay raise due to budgetary concerns.  (*See* Def. MSJ App. at 160-61, 164).  In an attempt to rebut this explanation, plaintiff argues that the budget did not prevent him from receiving a 10% pay raise upon his promotion from IT Analyst III to GIS Analyst III.  That plaintiff was paid more money for a different job with different responsibilities has no bearing on the ultimate issue of discriminatory intent.

him to a criminal background check and unfair discipline. (*See* Plf. Orig. Compl. at 3, ¶ 9 & *id.* at 4-5, ¶ 21). To establish a *prima facie* case of retaliation, plaintiff must establish, *inter alia*, a causal link between his protected activity and the adverse employment action. *See Fierros*, 274 F.3d at 191. Although this burden is not onerous, plaintiff must demonstrate a causal link by producing at least some evidence that the decisionmakers had knowledge of his protected activity. *See Manning v. Chevron Chemical Co.*, 332 F.3d 874, 883 n.6 (5th Cir. 2003), *cert. denied,* 124 S.Ct. 1060 (2004), *citing Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001).

With respect to his failure to promote claim, plaintiff has failed to identify the decisionmakers responsible for filling the open Communications Manager positions. Nor is there any evidence that these unidentified decisionmakers were aware that plaintiff filed internal complaints of discrimination against his supervisors. Similarly, there is no causal connection between plaintiff's protected activity and any change in his working conditions, access to equipment, and denial of overtime pay. The summary judgment evidence shows that plaintiff was transferred from the dispatch section in the basement of City Hall to the GIS office on the seventh floor of the same building in January 2004--one month before he filed his first internal grievance and four months before his EEOC charge. (*See* Def. MSJ App. at 151). Plaintiff's access to the computer network was limited and his request for overtime pay denied sometime before he was transferred. (*See id.* at 151-52, 186-87).

Plaintiff also contends that he was denied the opportunity to work overtime in retaliation for engaging in protected activity. Although these overtime opportunities arose after plaintiff filed his initial grievance in January 2004, plaintiff cannot establish that other similarly situated employees were treated more favorably. A similarly situated employee is one who was treated differently under "nearly identical" circumstances. *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir.

1995). Employees with different supervisors are not "nearly identical." *See, e.g. Lawrence v. United Airlines, Inc.*, No. 3-01-CV-0809-H, 2002 WL 1489536 at *3 (N.D. Tex. Jul. 10, 2002). Plaintiff identifies Laura Spray, O'Brian Goldsberry, Steve Coffman, Bill Richardson, Allen Hall, and "all the GIS analysts in the GIS department, all the IT analysts . . . in the CIS department, and all those who work [under] Chief Kay" as similarly situated employees who were allowed to work overtime. (Def. MSJ App. at 33). At the time of the alleged retaliation, plaintiff worked in the Fire-Rescue Department under the supervision of Lieutenant George Snowden. (*Id.* at 154). GIS analysts and IT analysts who work in different departments under different supervisors are not similarly situated to plaintiff. Nor are Spray, Goldsberry, Coffman, Richardson, and Hall--all of whom are uniformed, non-exempt employees who are permitted to work overtime. (*Id.* at 152-53, 155). By contrast, plaintiff is a civilian, exempt employee subject to different wage and hour requirements. (*Id.* at 95, 155). In addition, Coffman, Richardson, and Hall are sworn firefighters who work under Deputy Chief Kay, not Lieutenant Snowden. (*Id.* at 152).

Finally, plaintiff alleges that the City retaliated against him by denying him training opportunities, taking his computer, subjecting him to a criminal background check, issuing a letter of reprimand, and docking his pay. The City offers legitimate, non-retaliatory explanations for each of these actions. According to Snowden, plaintiff was not allowed to attend a GIS training course in April or May 2004 because it was too expensive and not within the department's budget. (*Id.* at 154). When plaintiff complained that his computer was slow, Snowden sent it out for repairs. This happened twice. Both times, the computer was returned in less than a day. (*Id.* at 154, 166). Snowden ordered a criminal background check on plaintiff because he has access to sensitive information. (*Id.* at 154-55). As for the discipline and pay complaints, Snowden explains:

> Afriyie has been consistently late and consistently failed to inform me of the reasons for his tardiness. I gave Afriyie a letter of counseling regarding his tardiness, but Afriyie continued to be late. After one instance of tardiness, I gave Afriyie unapproved leave without pay because he was late to work again. I told him he could use some of his accrued vacation leave to cover the time he was late. Afriyie refused to use vacation leave, so I placed him on unapproved leave without pay, which resulted in his pay being docked.

(*Id.* at 155). Because the City has articulated legitimate reasons for each of its employment decisions, the burden shifts to plaintiff to offer evidence that the proffered explanations are pretextual. *See Evans v. City of Bishop*, 238 F.3d 586, 590 (5th Cir. 2000). Other than plaintiff's own subjective beliefs and conclusory assertions of pretext, no such evidence exists.

In sum, plaintiff has failed to adduce sufficient evidence to create a genuine issue of material fact with respect to any act of retaliation that occurred after May 13, 2004. The City is entitled to summary judgment as to this claim.

## RECOMMENDATION

Defendant's motion for summary judgment [Doc. #25] should be granted.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party may file written objections to the recommendation within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). The failure to file written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED:   December 22, 2006.

                                    _____
                                    JEFF KAPLAN
                                    UNITED STATES MAGISTRATE JUDGE